## Charles L. Bonney v. Anna M. Perham, use of, etc.

1. HUSBAND AND WIFE—*Husband's Liability for Necessaries Furnished the Wife.*—Where a husband turns away his wife without justifiable cause, he is bound for necessaries suitable to his station and estate, supplied to her by others.

2. SAME—*Where the Husband Fails to Supply the Wife with Necessaries.*—Where the husband and wife are living together and he refuses to supply her with necessaries, she can pledge his credit for them; but if he provides for her, he is not bound by her contracts unless they are made by his authority or with his concurrence.

3. SAME—*Where the Husband Abandons the Wife.*—Where the husband abandons the wife, or without reasonable cause turns her away, or by ill usage compels her to leave him, he is liable for her necessaries and he sends credit with her to that extent.

4. SAME—*Where the Wife Abandons the Husband.*—Where the wife, without sufficient cause, voluntarily leaves her husband, against his will, he is not liable for her maintenance elsewhere and she can not bind him for the same.

5. SAME—*Presumptions as to the Wife's Authority.*—While the husband and wife are living together, she is presumed to have authority to bind him for necessaries suitable to his estate and station, and the burden is upon the husband to show that for some reason such authority did not exist.

6. SAME—*While Voluntarily Living Apart.*—Where the husband and wife are voluntarily living apart, not temporarily, but permanently, the presumption of authority upon the part of the wife to bind the husband for necessaries ceases to exist. For necessaries furnished under such circumstances the burden is upon the person furnishing them to show that the wife was in need of them, that the husband failed to supply her, and that she was not at fault, or that the husband authorized or assented to the sale.

Assumpsit, for goods, etc. Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Reversed and remanded. Opinion filed July 2, 1902.

**Statement.**—This was an action of assumpsit. The evidence for plaintiff showed the sale by Mrs. M. S. Morris, a dressmaker, to Mrs. Charles L. Bonney, November 27, 1899, of the following goods which had not been paid for:

1899.

Dec. 1.   Black cloth dress...........$100.00

| | | | |
|---|---|---|---:|
| Dec. | 1. | Brown wool suit | 75.00 |
| " | 1. | Pair imported corsets | 20.00 |
| " | 1. | Blue silk waist | 30.00 |
| " | 1. | Lace waist | 65.00 |
| " | 1. | Blue flannel waist | 15.00 |
| " | 1. | Brown silk petticoat | 12.50 |
| " | 1. | Black silk petticoat | 12.50 |
| " | 1. | Black gamp | 10.00 |
| " | 2. | Satin front for waist | 10.00 |
| " | 2. | Gray crepe dress | 125.00 |
| " | 2. | Pink silk waist | 33.00 |
| " | 1. | Blue taffeta silk skirt | 45.00 |

$553.00

That the goods belonged to Mrs. Morris and the charges were entered in books belonging to Mrs. Morris. That these goods were "similar," and of the "same kind and nature" and "practically the same class of goods," and "ranged about the same in price" as goods previously purchased by Mrs. Bonney from Mrs. Morris. That every one of the purchases was made by, and charged to, Mrs. Bonney. That the goods were either taken away from Mrs. Morris by Mrs. Bonney or were sent by express to Clinton, Iowa, at Mrs. Bonney's request. That a copy of the original bill was sent to Mr. Bonney. That Mrs. Bonney did not object to the price and accepted the goods. That Mrs. Bonney wore the goods. That no part of the bill has been paid. That the prices are "regular." That Mrs. Morris' business was conducted under the name of "Perham," and Mrs. Morris had the financial part of the business. That Mrs. Perham's name was Annie M. Perham.

The evidence for defendant tended to show: That defendant did not know Mrs. Morris; had never bought goods of her and never, unless by implication of law, authorized any one to buy from Mrs. Morris. Defendant first knew of the purchase of these goods about eight months after they were bought. Knowledge of purchase was by receipt of the bill, dated July 23, 1900. That at the time of the pur-

chase in question Mrs. Bonney was not a member of the family of Mr. Bonney. That Mr. Bonney's income in 1899 was about $4,000, of which $2,500 went to Mrs. Bonney. That defendant never had received any bills from Mrs. Perham or Mrs. Morris (except this bill in question) and never paid any. That about December 1, 1899, Mrs. Bonney had three or four trunks full of hats, dresses and clothes of all kinds. That defendant kept Mrs. Bonney supplied with necessaries suitable to his estate and position. That Mr. Bonney was an attorney in 1899 and was connected with a street railway company which failed in April, 1900, and which is now in a receiver's hands. That he had 668 shares of its stock which had no market value. That he did not have any other business. That since September, 1899, he lived at the Chicago Athletic Club. Prior to that he lived at the Lakota and Metropole hotels in Chicago. That Mrs. Bonney never dressed as well as when she purchased the goods in controversy. That in 1897, 1898 and 1899, her manner of dress was practically the same. That in 1899 she went to Europe three times. That Mr. Bonney had not seen Mrs. Bonney since September 6, 1899, or about three months before the goods in question were purchased. That Mr. Bonney's brother, in 1899, advanced to Mrs. Bonney at defendant's request, about $4,500 for the payment of Mrs. Bonney's bills; and so on; that Mr. Bonney supplied her with moneys suitable to his condition in life; that Mr. Bonney did not draw any salary; that Mrs. Bonney got from seventy-five to eighty per cent of Mr. Bonney's income in addition to this $4,500; that the $4,500 advanced by defendant's brother to Mrs. Bonney was charged up to Mrs. Bonney; that in a divorce settlement Mrs. Bonney got $40,000 in real estate; that $2,500 was paid to her in December, 1899, being part of the $4,500 advanced by defendant's brother; that her debts were not known of; that in October and November, 1899, Mrs. Bonney received from defendant's brother about $1,000.

The jury found for the plaintiff, assessing the damages at $553. The jury also made special findings as fol-

lows: 1. That the defendant did not, between September 7, 1899, and December 7, 1899, furnish his wife with money for the purpose of enabling her to provide herself with the necessaries of life in the sum of $1,000 and upward. 2. That the estate and income of the defendant, as it was between September 7, 1899, and December 7, 1899, required defendant to expend more than $300 per month in providing his wife and children with the necessaries of life suitable to their condition in life. 3. That the condition in life of the wife and children during the year 1899 required a greater expenditure than $300 per month in providing them with necessaries of life suitable to such condition, and to his estate. 4. That the defendant did not at all times during 1899 provide his wife and family with the necessaries of life suitable to their condition, and to the extent of his ability, considering their former style of living, and the extent and productiveness of his estate. Judgment was entered on the verdict for the amount thereof. The court, at the request of the plaintiff, instructed the jury " that where goods are sold to the wife upon the credit of the husband, if the goods are necessary, and suitable to the wife's position in life, it may be inferred that she makes the purchase as the agent of her husband," and also " that the husband is, in general, bound to furnish the wife with all necessary articles suitable to his condition in life."

LYMAN M. PAINE, attorney for appellant.

In Illinois a married woman may make contracts and incur liabilities to the same extent as a *feme sole*. She may use her own earnings and sue in her own name, free from interference of her husband or his creditors. She may arbitrarily maintain a condition in life, independent of the condition in life or estate of her husband, and for which he is not liable. Rev. Stat. (Ill.), Husband and Wife, Sec. 6 and 7; Martin v. Robson, 65 Ill. 129; Kirkpatrick v. Clark, 132 Ill. 342; Stewart v. Potts, 9 Ill. App. 86; Partridge v. Arnold, 73 Ill. 600; Greenwood v. Jenkle, 68 Ill. 319; Dyer v. Keefer, 51 Ill. 525; Casner v. Preston, 109 Ill. 531;

Avery v. Moore, 34 Ill. App. 115; Dow v. Eyster, 79 Ill. 254; Jaycox v. Wing, 66 Ill. 182.

Primarily it is the absolute right and duty of the husband to furnish necessaries for the wife. If he does so, neither the wife nor any one else has a right to run him into debt without his knowledge or consent. Compton v. Bates, 10 Ill. App. 78; Jolly v. Rees, 15 C. B. N. S. 628; Debenham v. Mellor, House of Lords, 1880; Clark v. Cox, 32 Mich. 204; Rea v. Durkee, 25 Ill. 503; Bevier v. Galloway, 71 Ill. 517; Martin v. Robson, 65 Ill. 129; Montague v. Benedict, 3 Barn. & C. 631; Montague v. Espinesse, 1 Car. & P. 502; Atkins v. Curwood, 7 Car. & P. 756; Gotts v. Clark, 78 Ill. 229.

The involuntary liability of a husband, for debts created by his wife, is limited to a reasonable proportion of his income and estate. Compton v. Bates, 10 Ill. App. 81; Robertson v. Artz, 38 Ill. App. 593; Artz v. Robertson, 50 Ill. App. 27; Hunt v. Thompson, 3 Scam. 180; Wilson v. Bishop, 10 Ill. App. 590; Bevier v. Galloway, 71 Ill. 517; Martin v. Robson, 65 Ill. 129; Montague v. Benedict, 3 Barn. & C. 631; Montague v. Espinesse, 1 Car. & P. 502; Atkins v. Curwood, 7 Car. & P. 756; Clause 4, Sec. 1, Chap. 39, R. S.

The proportion of the husband's income and estate which is subject to claims of, or against, the wife, either during coverture or for separate maintenance, or for alimony, or by descent, varies from a sum sufficient to meet the cost of avoiding actual want, to a third, or occasionally a half, depending on special circumstances, to be shown by plaintiff. With the single exception of death, with no kindred, can a wife take the entire estate, and under no circumstances can she plunge the husband into involuntary debt beyond his entire income. Bishop on Marriage and D., Sec. 554; Walker v. Simpson, 7 Watts & S. (Pa.) 83; Fueston v. Butcher, 9 Car. & P. 643; Rotch v. Miles, 2 Conn. 638; Harrison v. Grady, 14 Week. R. (Eng.) 139; Cothran v. Lee, 24 Ala. 380; Bevier v. Galloway, 71 Ill. 517; State v. Housekeeper (Md.), 16 Atl. R. 383; Carstens v. Henschman,

Bonney v. Perham.

61 Mich. 426; Hyman v. Harding, 162 Ill. 357; Harding v. Harding, 144 Ill. 590; Harding v. Harding, 180 Ill 481; Bishop on Divorce, Sec. 460; Stewart on Marriage and D., 388; Brown on Divorce, 4th Ed., 175; Am. and Eng. Enc. Law, Alimony, 447; Germond v. Germond, 4 Paige, 643; Denton v. Denton, 1 Johns. Ch. 364; Forrest v. Forrest, 3 Bosw. 672; Wright v. Wright, 1 Edw. Ch. 62; Williams v. Williams, 4 Des. 183; Amos v. Amos, 3 Greene Ch. 171; McGee v. McGee, 10 Ga. 477; Collins v. Collins, 29 Ga. 517; Williams v. Williams, 29 Wis. 517; Razor v. Razor, 149 Ill. 621; Wilson v. Wilson, 102 Ill. 297; Raymond v. Raymond, 12 Ill. App. 172; Clause 4, Sec. 1, Chap. 39, R. S. Ill.; Clause 6, Sec. 1, Chap. 39, R. S. Ill.

The burden, in charging the husband on a contract made by the wife, is on the tradesman to show express authority from the husband, or such facts and circumstances as establish such authority by implication.   Compton v. Bates, 10 Ill. App. 81; Gotts v. Clark, 78 Ill. 229; Hunt v. Thompson, 3 Scam. 179; McMillan v. Lee, 78 Ill. 443; Rea v. Durkee, 25 Ill. 503.

And the burden is also on the tradesman to show that the goods were within the condition of life of the husband. Ross v. Ross, 69 Ill. 569.

And the burden is also on the tradesman to show that the particular goods sold by him were reasonably necessary. Artz v. Robertson, 50 Ill. App. 34.

The liability of the husband rests on the doctrine of agency.   An agent with funds can not buy on credit.   Proctor v. Tows, 115 Ill. 138; Garrels v. Morton, 26 Ill. App. 433; Boltz v. Huston, 23 Ill. App. 579.

And the tradesman who sells goods to the wife as implied agent of her husband is bound to take notice of all of the rights of the husband.  Ignorance of the facts by the tradesman is immaterial.   Schlesinger v. Keifer, 30 Ill. App. 253.

The goods must be needed for present use and not for use after separation or purchased in contemplation of divorce.   Compton v. Bates, 10 Ill. App. 78; Hudson v. Sholem, 65 Ill. App. 61.

All legal presumptions are against the liability of the husband.   Rea v. Durkee, 25 Ill. 503; Gotts v. Clark, 78 Ill. 229.

W. R. HAUZE and W. B. WILSON, attorneys for appellee.

A husband is liable for necessaries supplied his wife on credit; and necessaries include such things as are reasonably fit for her condition in life and his estate.   Gotts v. Clark, 78 Ill. 229; Robertson v. Artz, 38 Ill. App. 593.

If a husband has allowed the wife to purchase goods on credit from a tradesman for a reasonable time, he is liable for further extensions of credit for similar goods and for substantially similar amounts, unless notice is given to the tradesman that no further credit must be extended.   Compton v. Bates, 10 Ill. App. 78.

Authority of the wife to purchase goods on credit may be implied as well as expressed, and the implied authority may be from prior course of dealing.   Compton v. Bates, 10 Ill. App. 78.

MR. JUSTICE WATERMAN delivered the opinion of the court.

If a husband without justifiable cause turns away his wife he is bound for necessaries suitable to his station and estate supplied to her upon her order.   If husband and wife live together, and he will not supply her with necessaries, she can then pledge his credit therefor; but if he provide for her he is not bound by her contracts unless they are made by his authority or with his concurrence. Martin v. Robson, 65 Ill. 120.

If the husband abandons his wife, or without reasonable cause turns her away, or by ill usage compels her to leave him, he is liable for her necessaries, and sends credit with her to that extent.  Schouler on Husband and Wife, Sec. 111.

If the wife, without sufficient cause, voluntarily leave her husband against his will he is not liable for her maintenance elsewhere, and she can not bind him therefor. Schouler on Husband and Wife, Sec. 111.

While the husband and wife live together she is presumed to have authority to bind him for necessaries suitable to his

estate and station, and the burden is upon the husband to show that for some reason such authority did not exist. Schouler on Husband and Wife, sections 106, 107, 108; Compton v. Bates, 10 Ill. App. 78, 82, 83.

Where the husband and wife are voluntarily living apart, not temporarily, but permanently, the presumption of authority upon the part of the wife to bind the husband by orders for necessaries, ceases. For necessaries furnished under such circumstances the burden is upon the tradesman to show that the wife was in need of the goods; that the husband failed to supply her, and that the wife was not at fault, or that the husband authorized or assented to the purchase. Schouler on Husband and Wife, Sec. 119; Vol. 9, 1st Ed. Am. & Eng. Ency. of Law, p. 815–7, 810–11; Schunckle v. Bierman, 89 Ill. 454–456; Wilson v. Bishop, 10 Ill. App. 588–590.

. In the present case, when the goods for which this suit was brought were purchased, Mr. and Mrs. Bonney were permanently living apart, she in Iowa, he in Illinois. There was no evidence that he had not supplied her with necessaries, on the contrary there was evidence that for a man of his means he had furnished a very large sum of money with which to supply her wants, the evidence being that of his entire income of $4,000, he has devoted from sixty to seventy per cent. There was no evidence that the living apart was without her fault or because of his.

Nor did it appear that these goods were, or that any goods have ever been supplied by the plaintiff upon the credit of the husband. Mrs. Bonney had frequently, before, purchased similar goods of Mrs. Morris; the charge was always made, as in this case, to Mrs. Bonney; the present bill was purchased by Mrs. Bonney December 1, and 2, 1899. A bill therefor was rendered to Mrs. Bonney; thereafter a bill was sent to Mr. Bonney.

July 23, 1900, Mr. Bonney, by then receiving a bill, first learned of the purchase of these goods. The husband is not liable when the goods are supplied on the credit of a third person or that of the wife. Schouler on Husband

and Wife, Sec. 109; Metcalfe v. Shaw, 3 Campbell, 22; Stammers v. Macomb, 2 Hend. 454; Bentley v. Griffin, 5 Taunt. 356; Carter v. Howard, 39 Vt. 106; Bugbee v. Blood, 48 Vt. 497; Patterson v. Gandasequi, 15 East, 62.

Nor is it the case, as the jury were instructed, that where goods are sold to the wife upon the credit of the husband, if the goods are necessary and suitable to the wife's position in life, it may be inferred that she makes the purchase as the agent of her husband. Her position in life may be far above his. She may be the president of a college; the chief officer of a fashionable woman's club; an author of distinction; a great artist or orator; the pastor of a large and wealthy church; and he a clerk, or servant, at a salary of forty dollars a month. In determining what are necessaries which the husband is bound to supply, as they must be paid for from his estate, the estate and degree of the husband should be considered. Compton v. Bates, 10 Ill. App. 78, 85. Neither the general nor the special verdicts are sustained by the evidence. Mrs. Morris testified that the goods in controversy were sold by her to Mrs. Bonney and belonged to her, Mrs. Morris; that she conducted her business under the name of Perham, and had done so for twelve years. The suit should have been brought by Mrs. Morris in her own name and not "Anna M. Perham, for the use of M. Morris;" describing herself, if she desired, as M. Morris, doing business under the name of Perham.

The judgment of the Superior Court is reversed and the cause remanded.